### LOWELL MACH. SHOP v. SACO & PETTEE MACH. SHOPS.

#### SAME v. PETTEE IRON WORKS et al.

(Circuit Court, D. Massachusetts. March 19, 1902.)

#### Nos. 1,297, 1,298.

PATENTS—INFRINGEMENT—DEVICE FOR GRINDING FLATS OF CARDING ENGINES.
The Knowles & Tatham patent, No. 464,029, for a device for grinding the flats used in carding engines, construed, and *held* not infringed by machines made in accordance with the Penney patents, Nos. 544,441 and 620,353.

In Equity. Suits for infringement of letters patent No. 464,029, issued to Knowles & Tatham December 1, 1891, for a device for grinding the flats employed in carding engines. On final hearing.

Wm. A. Macleod, for complainant.

Richardson, Herrick & Neave, for defendants.

114 F.—32

BROWN, District Judge. These suits are for infringement of patent No. 464,029, to Knowles & Tatham, dated December 1, 1891. The patent has the misleading title, "Carding Engine," but it is apparent from the specification that its subject-matter is apparatus for grinding the revolving flats of a carding engine, and that it does not relate to the carding operation. The carding engine of the type to which the patent refers consists of a large main cylinder, having wire card clothing thereon. About this cylinder travels an endless chain of flats, which are long strips of metal having wire card clothing, which co-operates with the card clothing upon the cylinder. The wire clothing upon these flats must be adjusted to the cylinder with great accuracy, in order that a very thin and uniform film of cotton fibers, laid substantially parallel, may be formed by the co-operation of the main cylinder and flats. About one-half of the flats are in working position on the cylinder at one time, the other half moving slowly around from engagement with the cylinder until they again come into operation. The wire clothing on each flat requires to be ground from time to time. It was old to do this by bringing the wire clothing of each flat into contact with a grinding roll when the flat is not in position for carding, but is returning to the point where it is again operative for carding. The peculiar shape of the flat gives rise to certain mechanical difficulties in presenting the wire clothing of the flats to the grinding roll. It does not appear, however, that the problem of grinding the flats is connected with, or complicated by, the carding operation, which continues while the flats are being ground. During the carding operation the series of flats in operation is supported at each end upon guide ways called "flexible bends." Each flat is a substantially rigid bar, longer than the main cylinder. The card clothing on each flat is shorter than the length of the flat. Thus at each end of the flat there is a guiding surface, or "shoe," resting upon the flexible bend or support. It is impractical to bring the wire clothing of the flats to the grinding roll by the same means employed to bring it to the cylinder of the carding engine. In its proper working relation, one edge of the flat is nearer to the cylinder than the other edge of the flat. The wire surface is thus slightly tilted or heeled; the edge of the flat nearest the clothing on the main cylinder being called the "heel," and the edge furthest from the cylinder the "toe." The inclination of the flat is small; the "heel," or closest point, being commonly less than .01 of an inch away from the surface of the main cylinder, while the "toe" is slightly more than .03 of an inch. The middle portion of the end of the flats is cut away, so that the bearing of the flat upon the flexible bend is at two points, one under each edge. The tilting of the wire surface of the flat is due to the unequal length of the heel and toe. The flat stands on two legs of unequal length. The heel is higher than the toe by an amount proportionate to the amount that the heel is to stand nearer than the toe to the main cylinder clothing. It will thus be seen that if the flat, in its working position, were brought into contact with a grinder, the grinder would destroy the shape of the wire clothing by grinding off its heel. It is therefore necessary in the grinding operation to employ some device to correct the normal tilt of the

flat, in order that all portions of the surface of the wire may be brought into contact with the grinding roll without destroying the proper angle of the wire. The prior art discloses a number of devices for doing this. One method was to provide each flat with a separate guide surface on the back of the flat. The flat thus is given two separate guide surfaces,—one to support it in its proper angle when at work carding, and another to support it in the grinding operation. A second method is disclosed in the Clegg & Lucas British patent, No. 623, February 19, 1874. Briefly, the method of Clegg & Lucas was to raise the low edge of the flat by a sliding block, which corrected the tilt, and brought the wire surface into correct relation with the grinder. This involved mechanism for inserting and withdrawing the sliding block at the proper time. The British patent to Hetherington, No. 2,642 (1887), provides a movable guide whereby the flat is tilted so as to compensate for the bevel. In a second patent to Hetherington, No. 16,157 (1887), the grinding roll is given a movement with relation to the guide, instead of the guide with relation to the grinding roll. In both the Hetherington British patents the revolving flats are carried past the grinder, having the heel and toe bearings in immediate contact with a guide; and, at the time of grinding, the legs of this flat are at a different level, produced by the action of a movable part. The principal difference between the device of the patent in suit and these machines is in the employment of a stationary guide instead of a moving guide. The combination of a grinding roller, a guide controlling the position of the flat, and means to hold the flat against the guide, was old. The patent, therefore, is not for a machine having a new function, or for a new generic combination, but is for a combination of parts of a specific character, as appears by the claim:

"The hereinbefore described arrangements of apparatus for grinding the flats employed in carding engines in which revolving flats are employed, which arrangements of apparatus consist in fixed parts provided with surfaces, $e^2$ and $e^3$, formed parallel with each other, and separated from each other by a difference of level such that a flat held against the surfaces, $e^2$ and $e^3$, will have its card-wire surface parallel to said surfaces, $e^2$ and $e^3$, and in levers, such as g, by means of which the flats being ground may be successively held against the surfaces, $e^2$ and $e^3$, and arranged, employed, and operating in conjunction with the grinding roller, substantially as and for the purposes hereinbefore described."

The patent in suit shows stationary guides, or "fixed parts," of specific construction. The guides are fixed to the carding engine. Each guide has two parallel surfaces, separated by a difference of level. During the grinding operation, the heel bearing travels in a straight line along one surface, and the toe bearing in a straight line along the other. The difference of level of the two surfaces of the guide compensates for the difference in height of the two legs or bearings of the flat, and the wire surface of the flat is thus brought parallel with the surfaces of the guide. At the time of grinding, the two bearings of the flat stand at different levels. There was thus accomplished, by a combination of stationary guides and co-operating levers, what previously had been accomplished by the former machines having movable guides. It does not appear, however, that the device of the

patent in suit is more efficient than the former machines, which are practical and still in extensive use.

The defendants' device is covered by patents to Penney, No. 544,-441, August 13, 1895, and No. 620,353, February 28, 1899. The defendants' grinding roll is supported by a "floating cradle," which is movable from one carding engine to another. This cradle has end plates carrying bearings for the grinding roll. To each end plate is secured a plate having its lower edge formed into a concave guide. When the floating cradle is applied to a particular carding engine, it rests upon brackets fixed to the carding engine; and surfaces of the end plates of the cradle slide upon surfaces of the bracket, so that the cradle has an up and down movement. As the flat approaches the grinder, it encounters a fixed abutment on the bracket, which raises it slightly, and the flat then engages with the concave guide on the lower edge of the cradle. The cradle and roll press downward by their own weight upon the flat during the grinding operation. The tilt of the flat is corrected, and the flat ground, by the co-operation of a fixed abutment on the carding engine, a concave guide of irregular curvature attached to the movable cradle, and the weight of the cradle and roll pressing down upon the flat. The advantages of this device are obvious and undisputed. The defendants have dispensed entirely with the levers of Knowles & Tatham, and of prior devices, and also with guides fixed to the carding engines. Thus, if we assume that a factory were fitted with 40 carding engines, Knowles & Tatham would require, for grinding, 80 levers, with studs and weights, and 40 pairs of guiding surfaces, each pair requiring very accurate adjustment. A single movable cradle, provided with bearings for a grinding roll, and with a single pair of guides for the flats, which can be successively applied to a number of different carding engines, is certainly an ingenious invention, which could not have been found in the Knowles & Tatham patent. The defendants' guides are portable guides, and not "fixed parts" attached to the carding engine. They have a fixed relation to the axis of the grinding roll at the time of grinding. But this must be true of all guides, movable and immovable; otherwise they would not be guides. It is also true that the guides have permanently a fixed relation to the axis of the grinding roll. In the Knowles & Tatham device, this is of consequence only at the time of grinding, and is a disadvantage at other times, since it involves useless friction; for the flats are continually pressed against the guides by the levers, not only during the grinding operation, which is infrequent, but during the long intervals when no grinding is being done. This defect may, however, be obviated by additional means—not disclosed by the patent—to hold the levers out of engagement with the flats when no grinding is being done. The defendants' guides are in a fixed and permanent relation to each other, and to the axis of the grinding roll, since they are parts of the movable cradle. The advantage of this is that it permits a single adjustment of two guides to each other and to the bearings of the grinding roll. That they permanently maintain this adjustment, makes them easily removable from the carding engine when not needed, and also ready to be applied to a machine without further adjustment when they are need-

ed. A pair of portable guides is practically a very different thing from the stationary "fixed parts" of Knowles & Tatham.

The complainant's case rests upon the proposition that there is a substantial similarity between the guides of the complainant and the guides of the defendants, and presents an extreme example of an attempt to hold a defendant liable not upon the ground that it infringes the claims allowed by the patent office, but claims constructed by experts. It is a complete answer to the complainant's case that the patentees have not taken out a patent for a guide having a fixed relation to the axis of the grinding roll. The patent is for a combination of three elements. One of these elements (i. e., levers) has no corresponding part in the defendants' device. The function of pressing a flat against a grinding roll was old, and therefore the fact that the defendants' device also performs this function is of no consequence. That it is done by substantially different mechanism from that used by the complainant, and that this new organization of parts gives a new result, and dispenses with a large number of moving parts, is undeniable. That the defendants do not employ the combination described and claimed in the patent in suit is clear. The defendants' expert regards the defendants' grinder as a radically different organism from that of the patent in suit, and as having many and important utilities and advantages not possessed by the Knowles & Tatham construction; and his evidence is much more convincing than that of the complainant's experts. It requires, however, no expert evidence to make it appear that the language of the claim is entirely inapplicable to the defendants' device. The complainant's counsel and experts concede that the defendants' device is not within the "literalism" of the claim; but it is apparent that the language of the claim describes elements—levers, g—which the defendants do not employ at all, and there is nothing whatever in the defendants' device which can be brought within the following language:

"Fixed parts provided with surfaces, e² and e³, formed parallel with each other, and separated from each other by a difference of level such that a flat held against the surfaces, e² and e³, will have its card-wire surface parallel to said surface, e² and e³."

The complainant contends that a pair of portable guides, not fixed to the carding engine, and having irregular, concave surfaces, performs the same functions as the above-described parts of the Knowles & Tatham device. This, of course, would be immaterial if true, for the complainant must stand on its patent, but it is not true. The function of the machine of Knowles & Tatham is to grind flats to a certain definite shape, to wit, a plane surface, with the wires of equal length. This cannot be done upon the defendants' machine. Nor can the complainant's machine produce the curved surface of the defendants' wire clothing. The machines are different in function. It is true that both grind the wire of flats, but the problem was not, broadly, to grind a flat, but to grind it to a predetermined form. The form to be produced determines the shape of the guide which is to produce it.

Invention is said to reside in overcoming the difficulties of using a stationary guide for the production of a predetermined form. The

complainant's experts enumerate these difficulties. A straight guide could not be employed, either horizontal or inclined in either direction, because this would grind one part of the surface, and not the other, and destroy the shape. A line of simple curvature would not answer, not because it would not grind, but because it could not be made to grind to a desirable shape. There is, however, a bare spot in the testimony of the complainant's experts. While it may show the difficulty of grinding a plane surface, and that Knowles & Tatham were the first to solve this difficulty, it does not close up the field of invention. There still remains open to other inventors the problem of grinding an irregular surface by an irregular guide. The contention of the complainant is that when Knowles & Tatham produced a guide whereon one leg of the flat traveled at one height, and the other at another, they closed the field of invention, and that any stationary guiding device whereon the two legs of the flat travel at unequal heights, and which produces any suitable form of wire surfaces, embodies the invention of Knowles & Tatham. It is said that the complainant's guide "is, in effect, two guides,—one for the heel bearing of the flat, and one for the toe bearing thereof. Throughout the entire grinding or trueing operation, the heel and toe bearings of the flat are each on its own guide." But it is surely a straining of language to say that the continuous curved surface of the defendants is two guides, or two independent guiding surfaces.

The brief says, of the Knowles & Tatham guides:

"These two guides are characterized by being at a difference of level, and this is the absolutely essential characteristic of the Knowles & Tatham guide, and necessarily of every equivalent thereof."

It is apparent, from the nature of the problem, and from an examination of the prior structures, that it is the essential characteristic of any guide, whether movable or immovable, that it should tilt the flat, and, as the flats are upon legs of unequal length, that the bearing points of the flats must be at an unequal level during the grinding operation. A very large part of the argument of the complainant and of its experts becomes valueless, from the insistence upon a difference of level of two bearing points of the flat upon a guide as a standard of comparison upon the question of infringement. As the problem is to correct the tilt of the surface to be ground, and as this necessarily involves a change in the position, not only of the wire surface, but of all other portions of the flat, and as flats are commonly constructed with two legs of unequal length, it is a requirement of the problem that the bearing points of the flats should be at a different level at the time of grinding, since this follows necessarily from the requirement that there should be a change of the inclination of the wire surface. It is impossible to tilt the top without tilting the bottom. The problem was how to accomplish the tilt, and it is absurd to make the solution of the problem the final test of infringement. Moreover, it is perfectly apparent that there must be some form of guide which will bring the flat into the appropriate relation to the roll. It is therefore absurd to make the fact that the guide has a proper relation to the grinding roll a test of identity of mechanism. A guide must, of course, establish a relation between the thing guided and the point

to which it is to be guided. All such contentions erroneously imply that Knowles & Tatham were the first to see that there must be a difference in the level of the bearing points of the flat at the time of grinding, or that a guide must guide. The complainant cannot base infringement upon the fact that, at the time of grinding, the guide holds the flat in a proper relation to the grinding roll, or upon the fact that the legs of the flat are at different levels at the time of grinding. The problem was how to shape a stationary guide so that it would accomplish this, and also permit the travel of the flat. Knowles & Tatham provided two straight lines at a difference of level which compensated exactly for the tilt. All parts of the flat advance in a straight line. It is necessary that the flat ends should have a special concavity between heel and toe, so that the shoe can straddle the set-off or inclined surface which separates the two guiding surfaces. If it be said that they were the first to utilize the fact that the flat had two independent bearing points, this involved, also, the use of the concavity between these bearing points. It is this concavity which makes the bearing points independent, and which prevents a change of position from the inclined surface or set-off. The defendants do not require the concavity between the heel and toe in order to tilt their flat, and there is no necessity for any independent legs or bearings, separated by a concavity. If both bearings of the shoe were connected by a plane surface, they would still travel along the guide. The device of the defendants, then, is not dependent upon seeing that the independent legs separated by a concavity could be utilized in tilting the flat. If their device will guide a flat equally well whether it has a single surface, or two independent legs separated by a concavity, then its essential feature is not the use of the independent bearings, nor the provision of a distinct guide for each of the independent bearings. The only remaining "essential resemblance" between the two guides is that each gets the flat into the correct position for grinding.

It is apparent that the case of the complainant is entirely outside the patent, and fails for this reason. But furthermore it appears that the case which has been constructed outside the patent is not a good case. There is no evidence before us, save in their descriptions of the invention, of what was the inventive conception of Knowles & Tatham. It is assumed by the experts that the patentees had a conception corresponding to what they attribute to them. It is by no means to be assumed in any case that the actual inventive conception of a patentee corresponds to the conceptions of an expert skilled in the principles of science. It is the province of scientific experts to detect resemblances and differences where none are apparent to the practical mind. The inventor is not entitled to enlarge his patent by asking the court to assume that he had a conception that embraced all that his experts can conceive. There is no evidence in this case that these inventors made any broader invention than that described by their patent; i. e., a particular device designed to perform a particular function. So far as appears, the Knowles & Tatham patent fully sets forth and covers the actual invention.

The complainant's experts, in my opinion, have failed not only in

getting within the patent, but also in showing that the defendants' guide is the embodiment of any novel idea first embodied in the device of Knowles & Tatham. On the contrary, I think that it appears that Knowles & Tatham left room for an independent solution of the problem of providing a grinding guide which was stationary at the time of grinding. This solution consisted partly in a change of function, to wit, a change of the form to be ground. As the whole problem is to provide a guide that will grind to a proper form, a change of form which involves or permits an important change of mechanism is a substantial change of function. This change of the form to be ground rendered the guide of Knowles & Tatham inapplicable, and called for the construction of a new form of guide, which was not suggested by the Knowles & Tatham patent. It rendered the use of two legs, separated by a concavity, nonessential. As the defendants' device is not dependent upon the conception that two independent legs, separated by a concavity, might be utilized in moving the flat to the required position, the defendants do not infringe the claims of the experts for the complainant.

I agree with defendants' counsel that the patent in suit and defendants' machine are alone necessary to a decision. The defendants' machine is not within the patent, even when construed without regard to the important limitations made by amendments after the rejection of claims. It seems unnecessary, therefore, to consider in detail the important question of anticipation by devices in the general art of guiding bodies of irregular shape to grinders or other shaping tools. In my opinion, the prior art of this case is not properly limited to devices formerly applied to carding engines. The problem was not peculiar to the art of carding, but was simply that of guiding a moving part of irregular shape against a grinding roll. It is impossible to say that the question of invention is to be decided solely upon the particular means of guiding that have been employed heretofore in carding engines. The guiding of parts to a cutting or grinding tool by means of a stationary guide is familiar, and any anticipations of stationary guides found in the general art of guiding an object of irregular shape against a tool would furnish complete instructions to a mechanic whose problem was to change the tilt of the flats of a carding engine. A mechanic who was absolutely ignorant of the carding art would be as well qualified to do this as one who knew it thoroughly. The "particular environment," as it is called, of these moving flats, though referred to in an indefinite way, has not been shown by the expert testimony to have presented any particular problem of difficulty which would not arise were these flats moving around in an endless chain, entirely disconnected from a carding engine. Given a chain of flats, having bearings at each end and moving along a guide; change the tilt of these flats by a stationary guide. That was the entire problem, which was not complicated in any way by the carding operation.

The patent to Holmes, No. 224,187, shows a contrivance closely resembling that of the patent in suit, both as a combination, and in the employment of a guide upon which the article to be shaped bears at two points of a different level. This patent at least throws serious doubt upon the soundness of the complainant's broad interpretation

of the Knowles & Tatham invention. The patent to Susemihl, No. 370,502, also shows a guide of substantially the same form as that of the patent in suit.

If the defendants' device were within the patent in suit, the question of invention would become important. It is unnecessary, however, to decide whether the patent is valid, since the brief of the defendants, in my opinion, presents a clear and conclusive defense of noninfringement.

The bills will be dismissed.